# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| JUAN CEJA SOLORZANO, | Case No. CV 18-00288-AS |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| ANDREW M. SAUL, Commissioner of the Social Security Administration,[1] | |
| Defendant. | |

## PROCEEDINGS

On January 12, 2018, Plaintiff filed a Complaint seeking review of the denial of his application for Disability Insurance Benefits. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 27-28). On June 13, 2018, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 15-16). On September

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration and is substituted in for Acting Commissioner Nancy A. Berryhill in this case. See Fed.R.Civ.P. 25(d).

12, 2018, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 21).

The Court has taken this matter under submission without oral argument. <u>See</u> C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On June 20, 2014, Plaintiff, formerly employed as an electrician (<u>see</u> AR 69-70, 197-98), filed an application for Disability Insurance Benefits, alleging an inability to work because of a disabling condition since November 1, 2013. (<u>See</u> AR 171-75).

On September 8, 2016, the Administrative Law Judge ("ALJ"), Sally C. Reason, heard testimony from Plaintiff (represented by counsel), medical expert Alan Levine, and vocational expert June Hagen. (<u>See</u> AR 54-77). On September 29, 2016, the ALJ issued a decision denying Plaintiff's application. (<u>See</u> AR 38-47). Applying the five-step sequential process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since November 1, 2013. (AR 40). At step two, the ALJ determined that Plaintiff had the following severe impairments -- "lumbar degenerative disc disease; and left (non-dominant) shoulder AC joint arthropathy with impingement syndrome." (AR 40-41).[2] At step three, the ALJ determined that Plaintiff did not have

---

[2] The ALJ determined that Plaintiff did not have any other musculoskeletal impairments (left elbow, right foot, and hips). (AR 40-41).

2

an impairment or combination of impairments that met or equaled the severity of one of the listed impairments. (AR 41).

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC")[3] to perform a reduced range of light work[4] with the following limitations: can lift/carry up to 20 pounds occasionally and 10 pounds frequently; can stand up to 40 minutes at a time for a total of 2 out of 8 hours, and can walk up to 30 minutes at a time for a total of 2 out of 8 hours (can stand/walk for a combined total of 4 out of 8 hours); can sit up to 60 minutes at a time for a total of 6 out of 8 hours; cannot climb ladders, ropes, or scaffolds, and can climb ramps/stairs with a handrail occasionally; cannot crouch, and can kneel, crouch and stoop occasionally; cannot do overhead reaching with the left (non-dominant) upper extremity; and must avoid all exposure to heavy vibratory machinery, unprotected heights, and extreme cold. (AR 41-46). At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (AR 46). At step five, the ALJ determined, based on Plaintiff's age, education, work experience and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (AR 46-47), and therefore that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 47).

//
//

---

[3] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

The Appeals Council denied Plaintiff's request for review on November 22, 2017. (See AR 1-5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)(internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).[5]

//
//
//

---

[5] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

4

**PLAINTIFF'S CONTENTION**

Plaintiff alleges that the ALJ erred in failing to properly assess Plaintiff's subjective symptom testimony. (See Joint Stip. at 4-10, 15-18).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from legal error.

**A.   The ALJ Properly Assessed Plaintiff's Testimony**

Plaintiff asserts that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's testimony about his symptoms and limitations. (See Joint Stip. at 4-10, 15-18). Defendant asserts that the ALJ properly discounted Plaintiff's testimony. (See Joint Stip. at 10-15).

1.   Legal Standard

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to

perform work-related activities for an adult . . . ." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, *3.[6]

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen, supra; Robbins v. Social Sec. Admin, 466 F.3d 880, 883 (9th Cir. 2006); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not find that Plaintiff was malingering, the "clear and convincing" standard stated above applies.

Generalized, conclusory findings do not suffice. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004)(the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible

---

[6] SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR 16-3p, which became effective on March 28, 2016, was in effect at the time of the Appeal Council's November 22, 2017 denial of Plaintiff's request for review. 20 C.F.R. § 404.1529, the regulation on evaluating a claimant's symptoms, including pain, has not changed.

grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1208 (9th Cir. 2001)(the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); <u>Smolen</u>, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

2. <u>The ALJ's Assessment of Plaintiff's Testimony</u>

Plaintiff gave the following testimony at the administrative hearing (<u>see</u> AR 56-61, 69-72):

> He lives in a house with his wife. He graduated from high school in Mexico. He became a naturalized United States citizen in 2001. He has worked full-time as an industrial electrician for 15 years. He worked for a union which assigned him to different companies. In November 2013, he stopped working because of work-related injuries. He filed a Workers' Compensation claim which settled about a year and a half ago. He still receives medical treatment from Dr. Campos at Northeast Valley Medical Group. (<u>See</u> AR 57, 69-72).
>
> He has back pain and pain and numbness in his legs. The numbness started in his right leg, but now is throughout both legs. (<u>See</u> AR 57-61, 72).
>
> Although he tried to help his wife with the dishes, he is not able to because of his back. He cannot do chores (cooking, cleaning, laundry, making the bed, taking out the trash) because of difficulty moving his back. While he is able to pick up a piece of paper from the floor and put it into the trash, he suffers when doing it. He is able to dress himself; he is able to button a button and close a zipper, but he sometimes needs his wife's help. He is able to brush his hair and teeth. He drives an automatic car when he feels okay, but most of the time his wife and children drive him. He goes with his wife to the grocery store; he walks as little as possible, and feels back pain if he tries to pick up a gallon of milk. He tries to go to the park for exercise, but his back pain is aggravated by ground which is too hard. He sometimes can sit for 15 to 20 minutes or for an hour before needing to stand up. He sometimes can stand

for 15 to 20 minutes or for an hour (but his back will
suffer). He is able to walk for half a mile, but slowly.
For the past year he has used a cane for assistance with
walking (he uses it at home when necessary, usually in the
mornings). His wife drove him to the hearing, which took 30
minutes. (See AR 56-60).

After summarizing Plaintiff's testimony (see AR 42), the ALJ wrote: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 42).

The ALJ addressed Plaintiff's testimony as follows:

The degree of limitation alleged by the claimant is neither
substantiated by nor consistent with the longitudinal medical
record in this case. The undersigned notes that the evidence
repeatedly indicates that, prior to his alleged work-related
injury in August 2013, the claimant had no significant
medical problems and "could perform all activities of daily
living without any difficulties" (Exhibit 2F/9, 55). The
record does show that the claimant reportedly felt the sudden
onset of back pain in August 2013 (while either washing his
car at home or moving items at work) (Exhibit 1F/29). Yet,
a clinical examination at that time revealed no deficits
except some limitation in back range of motion and muscle
spasm. The claimant was otherwise found to have normal
sensation, normal strength, normal reflexes, and a normal
straight leg raising test (Exhibit 1F/30). At a follow up
visit a week or two later, the claimant was similarly found
to have normal neurological function as well as a "normal"
gait (Exhibit 1F/39).

At previously mentioned, a subsequent MRI of the claimant's
lumbar spine in November 2013 did reveal degenerative disc
disease as well as a disc protrusions indenting the right L5
nerve root; however, there was no evidence of central or
foraminal stenosis at the L5 level (Exhibit 1F/95). Nor were
there any signs of radiculopathy upon clinical examination in

8

November 2013. While again found to have some limitation in back range of motion, the claimant was otherwise found to have a normal stability assessment, negative Patrick's test with painless passive hip range of motion, full (5/5) motor strength with normal muscle bulk and tone, intact sensation throughout the lower extremities, and a normal gait with intact ability to walk on heels and toes (Exhibit 1F/92). Upon subsequent examination in December 2013, the claimant's gait and station remained "normal" and his neurological function remained entirely intact (Exhibit 1F/123).

The foregoing findings simply do not suggest the claimant had any impairment(s) more limiting than found herein on or around the alleged onset date of disability. In January 2014, he evidently began seeing a worker's compensation doctor, Edward Haronian, M.D., whose clinical evaluation reportedly found not only evidence of back impairment, but also evidence of left shoulder AC joint tenderness and positive impingement sign (Exhibit 2F/57). As previously mentioned, an xray of the claimant's left shoulder at that time confirmed evidence of AC joint arthropathy (Exhibit 2F/60). However, a review of the subsequent treatment records reveals little to no mention of any ongoing shoulder problems, suggesting this has not been particularly serious or limiting. Instead, the claimant's treatment records mainly reflect complaints of back pain and treatment for the same.

Yet, as detailed below, the medical records generally fail to show evidence of radiculopathy or other objective findings which would support the degree of limitation the claimant has alleged. Nor are the claimant's alleged limitations enhanced by his course of treatment, which has been essentially routine following an epidural steroid injection in January 2014 (Exhibit 1F/123). The undersigned notes the claimant's pain reportedly "improved" following the injection (Exhibit 1F/142); and the record shows the claimant subsequently indicated that he was not interested in receiving any other invasive treatment (e.g., another injection or surgery) (Exhibit 2F/87). Although he evidently has used narcotic analgesics from time to time, treatment records from November 2015 indicate that the claimant admittedly has been controlling his back pain with use of only naproxen 2-3 times a day (Exhbiit 7F/7). Overall, the claimant's course of treatment is at odds with what one might reasonably expect, given the degree of limitation he has alleged.

Turning back to the objective medical findings, the record shows that in January 2014, Dr. Haronian found that the claimant exhibited a normal gait and remained able to walk on his heels and toes (Exhibit 1F/142). Thereafter, in July 2014, a physical medicine and rehabilitation physician, B. Sam Tabibian, M.D., specifically evaluated the claimant for signs of lumbar radiculopathy but found none. According to Dr. Tabibian, the claimant still clinically demonstrated full

(5/5) motor strength in all major muscle groups, normal sensation, and normal and symmetric deep tendon reflexes (Exhibit 2F/1). Moreover, a bilateral lower extremity EMG/NCV was performed and it was negative, showing no electrodiagnostic evidence of lumbar radiculopathy (or neuropathy) (Exhibit 2F/4).

A month later (in August 2014), Dr. Haronian declared the claimant "permanent and stationary" and further concluded that he had reached the "maximum medical improvement" given that he "did not wish to proceed with further [treatments]" (Exhibit 2F/87). The claimant evidently returned to see Dr. Haronian for refills of medication for back pain on two subsequent occasions -- once in January 2015 and once in May 2015 (Exhibits 6F/2-3, 6-7).

The claimant then saw William McMaster, M.D., for a comprehensive orthopedic evaluation in June 2015. At that time, the claimant subjectively complained of constant sever (7/10) pain in his back and legs (Exhibit 3F/1). He claimed that even minimal lifting aggravated his pain and further claimed to need a cane due to progressive weakness or other deficits consistent with the limitations alleged by the claimant. Dr. McMaster specifically observed that the claimant walked slowly but he did not note any antalgia or instability or other gait abnormality. He found the claimant had full range or motion of all four extremities. He found the claimant had normal/symmetric range of motion of the hips, with no crepitation or joint contracture. He found the claimant had limited back range of motion but no pelvic obliquity, no spondylolisthesis, no Trendelburg sign, and no muscle spasm. Finally, contrary to the above-referenced subjective complaints, Dr. McMaster found the claimant's motor function in the lower extremities remained full, with no evidence of muscle atrophy or other objective neurologic deficits (Exhibit 3F/2).

The undersigned notes the most recent treatment records reflect essentially normal physical examination findings in connection with visits by the claimant to Northeast Valley Health Corporation in November 2015 and February 2016 (Exhibits 7F/4, 9). Additionally, in contrast to the allegations in this case, these records reflect complaints of only localized back pain and specifically indicate that the claimant has "no radiation of pain" to the lower extremities (Exhibit 7F/2).

The foregoing inconsistencies raise questions about the reliability of the limitations alleged by the claimant in this case. Similarly, the claimant alleged in connection with the instant application that he is unable to speak and understand English (Exhibit 2E/1); yet, the evidence indicates otherwise. At the hearing before the undersigned, the claimant managed to answer some questions in English without (prior to) any interpretation (Hearing Record).

>      Further, a review of the medical records from Kaiser reveals
>      that in the treatment context the claimant has not required
>      an interpreter and has instead "preferred to use his own
>      English skills" (see, e.g., Exhibit 1F/5, 31). That the
>      claimant evidently provided inaccurate information on such a
>      basic matter as the ability to communicate in English is
>      another indication that the allegations in this case may not
>      be entirely reliable.
>
> (AR 42-44).

3. <u>Analysis</u>

The Court's review of the ALJ's decision shows that the ALJ properly discounted Plaintiff's testimony for the following specific reasons: (1) Plaintiff's treatment has been conservative and routine in nature, medications are effective and Plaintiff declined to receive additional and more invasive treatment, including additional epidural steroid injections and surgery; (2) diagnostic testing, and the record when viewed as a whole, did not support Plaintiff's complaints of disabling symptoms and limitations; and (3) Plaintiff made inconsistent statements regarding his ability to speak and understand English. As set forth below, the record supports the ALJ's finding that Plaintiff's testimony about the intensity, persistence and limiting effects of his symptoms was not credible.

    a. <u>Conservative and Routine Treatment</u>

The ALJ discounted Plaintiff's testimony concerning the limiting effects of his impairments based on Plaintiff's positive response to conservative treatment (<u>see</u> AR 43). <u>See</u> <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1040 (9th Cir. 2008)("The record reflects that Tommasetti responded favorably to conservative treatment including . . . the use

of anti-inflammatory medication [and] a transcutaneous electrical nerve stimulation unit . . . . Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain."); Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996)("the evidence suggesting that [the claimant] responded well to treatment" supports an adverse credibility finding); see also Warre v. Comm'r of the SSA, 439 F.3d 1001, 1006 (9th Cir. 2006)("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

A review of the record supports the ALJ's findings. As the ALJ noted, following an epidural steroid injection on December 13, 2013 (approximately one month after the alleged onset date of disability) (AR 369-74) Plaintiff received only conservative treatment for his back condition, including physical therapy, acupuncture, and pain medications. (See AR 396-400 [Kaiser Permanente, Physical Therapy Progress Notes dated January 21, 2014], 401 [Kaiser Permanente, Physical Therapy Progress Notes, stating that Plaintiff did not follow up with physical therapy after January 21, 2014], 480 [Edwin Haronian M.D., Follow-Up Report, Review of Diagnostic Studies, and Request for Authorization of a Primary Treating Physician dated March 21, 2014, stating: "The option of lumbar epidural injections as well as surgical intervention was discussed with the patient, however, he declines the above. He wishes to avoid the above with conservative treatment."], 490, [Edwin Haronian, M.D., Follow-Up Report of a Primary Treating Physician dated July 27, 2014], 500 [Edwin Haronian, M.D., Permanent and Stationary Report of a Primary Treating Physician dated September 9,

2014, stating that following the epidural injections "[m]edications and conservative treatment were provided"]).

The ALJ also noted that Plaintiff's back pain improved following the injection (see AR 390 [Kaiser Permanente, Progress Note dated January 10, 2014, noting: "Right sciatica low back pain has improved after right L4-5 & L5-S1 epidural steroid injection 12/13/2013."], 399 [Kaiser Permanente, Physical Therapy Progress Notes dated January 21, 2014, stating that Plaintiff's resting pain level was 4 out of 10], 465 [Edwin Haronian, M.D., Initial Orthopedic Evaluation of a Primary Treating Physician Report dated February 14, 2014, noting that "[t]he injections were administered on December 13, 2013, which have provided him temporary pain relief"], 490 [Edwin Haronian, M.D., Follow-Up Report of a Treating Physician dated July 27, 2014, noting that Plaintiff "reports partial benefit from previous lumbar epidural injections as well as acupuncture therapy"], 741 [Allison Campos, M.D., of Northeast Valley Health Corporation, Office Visit Notes dated November 4, 2015, noting that Plaintiff has been using Naproxen twice a day for pain], even though Plaintiff continued to use prescribed narcotics from time to time (see AR 505 [Synapse Medical Group, prescription for Tramadol dated January 30, 2014], 467 [Edward Haronian, M.D., Initial Orthopedic Evaluation of a Primary Treating Physician Report dated February 14, 2014, noting that Plaintiff "is currently taking[] Vicodin for pain"], 505-06, 509 [Synapse Medical Group, Prescriptions for Tramadol dated March 13, 2014, April 10, 2014, July 17, 2014, August 28, 2014 and October 9, 2014], 717 [Edwin Haronian, M.D., Follow-Up Report of Primary Treating Physician dated January 6, 2015, stating that Plaintiff's

13

"medications will be refilled as they are providing pain relief and improving functional status"], 713 [Prescription for Tramadol dated May 27, 2015], 554 [William McMaster, M.D., of Adult and Pediatric Orthopaedic Specialist, Report dated June 23, 2015, noting that "[i]n the past he was taking prescription opioid medications but has been weaned off of them and uses Tramadol 100 mg 2-4 times a day and gabapentin 600 mg three times a day for pain"], 739 [Allison Campos, M.D., of Northeast Valley Health Corporation, Office Visit Notes dated February 2, 2016, prescribing Tramadol], 239-40 [CVS, Patient Prescription Records showing Naproxen prescription filled on September 8, 2015, October 10, 2015 and April 22, 2016, and Tramadol prescription filled on June 3, 2015, November 4, 2015, December 11, 2015, January 11, 2016, February 8, 2016, March 17, 2016, and April 15, 2016].

The ALJ was entitled to discount Plaintiff's credibility based on his positive response to conservative treatment. See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ may properly rely on the fact that prescribed conservative treatment suggests a lower level of both pain and functional limitation).

The ALJ also relied on the fact that after the initial epidural steroid injection Plaintiff stated that he did not want any additional epidural steroid injections or any surgery. (See AR 480 [Edwin Haronian, M.D., Follow-Up Report, Review of Diagnostic Studies, and Request for Authorization of a Primary Treating Physician dated March 21, 2014, stating that Plaintiff declines lumbar epidural injections and surgical intervention], 500 [Edwin Haronian, M.D., Permanent and

14

Stationary Report of a Primary Treating Physician dated September 9, 2014 noting that, Plaintiff "did not wish to proceed with further lumbar epidural injections nor surgical intervention."]), 554 [William McMaster, M.D., of Adult and Pediatric Orthopaedic Specialists, Report dated June 23, 2015, noting: "He states he has been informed that surgery may be necessary but he states he is not interested on any surgery at this time."]). This was a permissible basis for rejecting Plaintiff's symptom testimony. An ALJ may consider many factors in weighing a claimant's credibility, including "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" Tommasetti, 533 F.3d at 1039.

Accordingly, the ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony based on conservative treatment.

b. Objective Medical Evidence

The ALJ determined that Plaintiff's testimony about the limiting effects of his impairments was not supported by the objective medical evidence (see AR 34). See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); SSR

16-3p, *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities").

As the ALJ noted, medical records revealed that Plaintiff's physical examinations *before and after* the November 1, 2013 alleged injury onset date were mostly unremarkable. (See AR 278 [Kaiser Permanente Progress Notes dated August 5, 2013, physical examination findings], 287 [Kaiser Permanente, Progress Notes dated August 8, 2013, physical examination findings, 311 [Kaiser Permanente, Note dated October 28, 2013, X-ray of lumbosacral spine, findings], and 319 [Kaiser Permanente, Progress Notes dated October 30, 2013, findings], 333 [Kaiser Permanente, Progress Notes dated November 13, 2013, physical examination findings], 342-43 [Kaiser Permanente, MRI of lumbar spine dated November 14, 2013, conclusions], 340 [Kaiser Permanente, Progress Notes dated November 14, 2013, physical examination findings], 372 [Kaiser Permanente, Progress Notes dated December 13, 2013, physical examination findings], 390 [Kaiser Permanente, Progress Notes dated January 10, 2014, physical examination findings], 471-72 [Edward Haronian, M.D., Initial Orthopedic Evaluation of a Primary Treating Physician Report dated February 14, 2014, lumbar examination findings], 485 [Edwin Haronian, M.D., Follow-Up Report of a Primary Treating Physician dated May 20, 2014, notations], 488 [Edwin Haronian, M.D., Follow-Up Report of a Primary Treating Physician dated June 17, 2014, notations], 414-17 [Physical Medicine Institute, B. Sam Tabibian, M.D., Electrodiagnostic Consultation Report dated July 14, 2014, physical

16

examination and electrodiagnostic findings], 490-91 [Edwin Haronian, M.D., Follow-Up Report of a Primary Treating Physician dated July 27, 2019, notations], 428 [A Functional Capacity Evaluation Report prepared by Sherry Leoni, DC, QME on August 4, 2014, spine - range of motion findings], 497-98  [Edwin Haronian, M.D., Permanent and Stationary Report of a Primary Treating Physician dated September 9, 2014, lumbar examination findings], 555 [William McMaster, M.D. of Adult and Pediatric Orthopaedic Specialists, Report dated June 23, 2015, physical examination findings], and 736 [Allison Campos, M.D., of Northeast Valley Health Corporation, Office Visit Notes dated February 2, 2016, notations].

As set forth above, substantial evidence supports the ALJ's determination that Plaintiff's statements about the limiting effects of his impairments was not supported by the objective medical evidence and this was a clear and convincing reason for discounting Plaintiff's credibility.  More importantly, this was not the sole legally sufficient reason for discounting Plaintiff's credibility.

c. <u>Inconsistent Statements</u>

Finally, the ALJ also properly discredited Plaintiff's testimony about the limiting effects of his impairments based on inconsistencies concerning Plaintiff's ability to communicate in English.[7]  See <u>Light</u>

---

[7] Defendant asserts that the ALJ did not rely on Plaintiff's statements about his ability to communicate in English as a basis for discrediting Plaintiff's testimony, but rather as a basis for assessing the vocational factors. (<u>See</u> Joint Stip. at 15 n. 6).  The Court
(continued...)

v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997)("In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work history, and testimony from physicians and third parties concerning the nature, severity, and effect on the symptoms of which he complains."); 20 C.F.R. § 1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . .").

As the ALJ noted, Plaintiff's statement in his application for Disability Insurance Benefits that he was unable to speak and understand English (see AR 189) is inconsistent with notations in Kaiser Permanente records that Plaintiff did not need an interpreter (see AR 253, 265, 279, 288, 297) and preferred to use his own English skills (see AR 279), and with the ALJ's observation that, at the hearing, Plaintiff answered some questions in English prior to or without those questions being translated by the interpreter, see Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("The inclusion of the ALJ's personal observations does not render the decision improper.") (citation omitted). This was a clear and convincing reason, supported by substantial evidence in the record, for discounting Plaintiff's credibility.

---

[7] (...continued)
disagrees. The ALJ clearly discredited Plaintiff's testimony based on Plaintiff's inconsistent statements concerning his ability to communicate in English. (See AR 44).

The ALJ's reasons for discounting Plaintiff's credibility - conservative and routine treatment, lack of support in the medical record and inconsistent statements - sufficiently allow the Court to conclude that the ALJ's credibility finding was based on permissible grounds and supported by substantial evidence in the record. The Court therefore defers to the ALJ's credibility determination. See Lasich v. Astrue, 252 Fed. Appx. 823, 825 (9th Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); accord Flaten v. Sec'y of Health and Human Serv., 44 F.3d 1453, 1464 (9th Cir. 1995). Where the ALJ has made specific findings justifying a decision to disbelieve Plaintiff's symptom allegations and those findings are supported by substantial evidence in the record, "we may not engage in second guessing." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 22, 2019

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE